# United States District Court

DISTRICT OF _____ DELAWARE _____

UNITED STATES OF AMERICA

v.

ALIRIO GALLEGO-DUGUE,
ERICA ROMERO, and
JAMIE NUNEZ

(Name and Address of Defendant)

## Criminal Complaint

05-76 M

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about April 14, 2005, _____ in New Castle _ County, in the District of __ Delaware and elsewhere _ defendant(s), (Track Statutory Language of Offense)

did, with intent to defraud, pass, utter, and keep in their possession counterfeited obligations of the United States, e.g., counterfeit $100 FRN's,

in violation of Title ___ 18 ____ United States Code, Section(s) 472 _____.

I further state that I am a(n)__ Special Agent, U.S. Secret Service ___ and that this complaint is based

Official Title

on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   YES

Signature of Complainant

Peter J. Murphy, Special Agent
U.S. Secret Service

Sworn to before me and subscribed in my presence,

_April 18, 2005_____   at ___Wilmington, DE_____
Date                                              City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name & Title of Judicial Officer        Signature of Judicial Officer

## AFFIDAVIT

I, Peter J. Murphy, being duly sworn, depose and state:

1. I am a Special Agent in the United States Secret Service. During my employment, I have been trained in the detection and investigation of counterfeit currency, and I have conducted investigations involving counterfeit violations. I am currently assigned to the Wilmington, Delaware Resident Office.

2. On 04/14/05, at approximately 3:30 p.m., the owner of F & N Wine and Spirits in Wilmington, Delaware received a counterfeit $100 FRN from a thin Hispanic female wearing a pink shirt for the purchase of a bottle of champagne. The owner accepted the counterfeit bill and gave the thin Hispanic female, later identified as Erica Romero, approximately $90 in genuine currency in change. Soon after, when the owner compared the note with a genuine $100 FRN, he realized the bill was counterfeit and reported the incident to the Delaware State Police.

3. On 04/14/05, at approximately 3:45 p.m., the owner recognized Romero exiting the Card Smart Store, adjacent to the F & N Wine and Spirits store, and saw her getting into a 2004 Nissan Sentra, NJ registration RLS17A. The owner followed the 2004 Nissan Sentra to the Safeway parking lot across the street, positioned his vehicle in front of the 2004 Nissan Sentra, and detained the driver of the vehicle, later identified as Alirio Gallego-Dugue. The owner saw large amounts of counterfeit $100 FRN's in the driver's side door and in Gallego-Dugue's lap. While the owner was detaining Alirio Gallego-Dugue, Erica Romero and Jamie Nunez arrived at the car, and the owner detained them as well until the police arrived.

4. On 04/14/05, at approximately 4:00 p.m., Corporal Miller, Delaware State Police Troop 1, responded to the Safeway parking lot. Gallego-Dugue gave verbal consent for Corporal Miller to search the 2004 Nissan Sentra. A search of the vehicle revealed several bags of clothing and a black gym bag containing two individually wrapped bundles of counterfeit $100 FRN's. Gallego-Dugue identified the black gym bag and the counterfeit $100 FRN's as his property.

5. On 04/14/05, Corporal Miller searched the purse of Jamie Nunez which revealed numerous counterfeit $100 FRN's along with genuine currency. A small amount of a green leafy substance, later determined to be marijuana, also was found in Nunez's purse. Corporal Miller also searched Erica Romero's purse which revealed numerous counterfeit $100 FRN's and genuine currency.

6. On 04/14/05, the police transported the three subjects from the parking lot at Safeway to DSP Troop#1 in Wilmington, Delaware. The subjects' rental vehicle also was transported and inventoried. As a result of the search, agents and officers found $2,289.00 in genuine currency, a fraudulent social security identification card, a Colombian passport in the name of Alirio Gallego-Dugue, 57,000 mil pesos (Colombian currency), and 122 counterfeit $100 FRN's ($12,200 total). A thorough search of Gallego-Dugue's black gym bag revealed 2.6 grams of cocaine and 33 pills (10.1 grams) of ecstasy.

7. On 04/14/05, Alirio Gallego-Dugue was advised of his *Miranda* rights by your affiant. After waiving his rights, Gallego-Dugue admitted to purchasing $10,000.00 in counterfeit $100 FRN's for $5,400.00 from Frank, a/k/a "Braze" (LNU). Gallego-Dugue stated that he met "Braze" at a bar in Elizabeth, New Jersey. Gallego-Dugue stated that "Braze" wanted to sell him $15,000.00 in counterfeit but Gallego-Dugue could not obtain enough money. Gallego-Dugue stated that he planned on going on vacation to Baltimore, Maryland with Romero and Nunez. Gallego-Dugue stated that he didn't want to use the counterfeit in New Jersey because there was too much counterfeit being used throughout the state. Gallego-Dugue stated that he recalled seven stores in Delaware in which the counterfeit $100 FRN's were passed. Gallego-Dugue stated that the counterfeit $100 FRN's were located in the driver's side map compartment, the middle console, and in his black gym bag in the 2004 Nissan Sentra, which he rented with his credit card on 04/13/05. Gallego-Dugue stated that he believed that Romero and Nunez knew the money was counterfeit because they split a portion of the proceeds with him. Gallego-Dugue admitted to purchasing the social security identification card several years ago from an unknown source.

8. On 04/14/04, Erica Romero was advised of her *Miranda* rights by your affiant. After waiving her rights, Romero stated that she had known Gallego-Dugue for approximately six weeks and had agreed to go to Baltimore, Maryland with him. Romero stated that she thought the money was "fake" when she made a purchase at the Rite-Aide in Delaware but kept shopping. Romero stated that she split the proceeds of the counterfeit $100 FRN transaction with Gallego-Dugue. Romero stated that she kept $30 genuine currency and Gallego-Dugue kept approximately $60 genuine. Romero stated that she went to a liquor store, Rite-Aide, and Forman Mills to use the "fake" money.

9. On 04/15/05, Erica Romero was advised of her *Miranda* rights by SA Bucalo, Newark, New Jersey Field Office, U.S. Secret Service. After waiving her rights, Romero stated that she had lied to your affiant in her first statement regarding the splitting of the proceeds of the counterfeit transactions because she thought it would keep Gallego-Dugue out of trouble if she took some of the blame.

10. On 04/15/05, Jamie Nunez was advised of her *Miranda* rights by SA Bucalo, Newark, New Jersey Field Office, U.S. Secret Service. Nunez stated that she had known Gallego-Dugue for approximately one month. Nunez stated that on 04/14/05, she overheard Gallego-Dugue talking on the phone with Western Union regarding wiring money to Colombia. Nunez stated that she used the counterfeit $100 FRN's at Acme, Gamestop, and Rite-Aide in Delaware. Nunez stated that she initially didn't know the money was counterfeit, but realized something was "fishy" after she used the counterfeit $100 FRN's at a few stores. Nunez stated that she also overheard a conversation earlier in the week in which Gallego-Dugue talked about counterfeit currency.

11. A total of seven stores - Acme, Gamestop, Rite-Aide, Forman Mills, Card Smart, F & N Wine and Spirits, and Safeway - were victimized with the counterfeit $100 FRN's. The counterfeit $100 FRN's used by the three suspects in Delaware have many security features, including: micro printing, red and bluish fibers, a security thread, optical varying ink, and the same printing process used to produce genuine currency (intaglio printing).

Based on the information listed above, your affiant respectfully requests the Court to issue a criminal complaint and arrest warrants for Alirio Gallego-Dugue, Erica Romero, and Jamie Nunez for violating Title18, United States Code, Section 472.

Peter J. Murphy
Special Agent
United States Secret Service